**FILED**
**CLERK**

6/21/2013 11:44 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
KEITH BARBOUR,

                    Plaintiff,

           -against-

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                  Defendant.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
12-CV-00548 (ADS)

**APPEARANCES:**

**Jeffrey D. Delott, Esq.**
*Attorney for the Plaintiff*
366 North Broadway
Suite 410k-3
Jericho, NY 11753

**Loretta E. Lynch**
United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, NY 11722
    Vincent Lipari
    Assistant United States Attorney

**SPATT, District Judge**.

On February 6, 2012, the Plaintiff Keith Barbour ("the Plaintiff") commenced this action

pursuant to Social Security Act 42 U.S.C. §405(g) ("the Act") challenging a final determination

by the Defendant, Michael J. Astrue, the Commissioner of Social Security ("the

Commissioner"), that he was ineligible for Social Security disability benefits. The parties agree

that this case should be remanded to the Administrative Law Judge ("ALJ") assigned to this case.

The only dispute is whether the case should be remanded for further administrative proceedings

or for the calculation of benefits. Presently pending before the Court is (1) the Commissioner's

1

motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) dismissing the complaint, reversing the ALJ decision, and remanding the case for further administrative proceedings in accordance with the fourth sentence of 42 U.S.C. § 405(g); and (2) the Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and remanding the case solely for a calculation of benefits. For the following reasons, the Commissioner's motion is granted; the Plaintiff's motion is denied; the Commissioner's decision is reversed; and the case is remanded for further administrative proceedings pursuant to § 405(g).

## I. BACKGROUND

### A. Procedural History

On September 6, 2005, the Plaintiff filed an application for Social Security disability benefits, alleging a disability beginning July 27, 2004. The Plaintiff alleged that he was unable to work due to neck and back pain, an enlarged heart, atrial fibrillation, high blood pressure, and diabetes mellitus. On February 27, 2006, the Social Security Administration ("SSA") denied his application. On May 11, 2006, the Plaintiff made a timely request for a hearing before an Administrative Law Judge.

On August 29, 2007, a hearing was held before Administrative Law Judge David Z. Nisnewitz. In a decision dated January 24, 2008, ALJ Nisnewitz denied the Plaintiff's claim for disability benefits. The Plaintiff sought review of ALJ Nisnewitz's decision by the Appeals Council.

On November 5, 2009, the Appeals Council granted the Plaintiff's request for review, vacated the January 24, 2008 hearing decision, and remanded the matter to an ALJ for further proceedings.

On March 15, 2011, a supplemental hearing was held before ALJ Seymour Rayner. In a decision dated April 21, 2011, ALJ Rayner denied the Plaintiff's claim for disability benefits. The Plaintiff sought review of ALJ Rayner's decision by the Appeals Council. On December 16, 2011, the Appeals Council denied the Plaintiff's request for review, thereby making ALJ Rayner's April 21, 2011 decision the final decision of the Commissioner in the Plaintiff's case.

On February 6, 2012, the Plaintiff commenced the present appeal from that decision.

**B.  The Administrative Record Prior to First ALJ Hearing**

**1.  The Plaintiff's Medical Background Prior to the Onset Date of July 27, 2004**

The Plaintiff was born on July 3, 1961 and was 43 years old on July 27, 2004, his alleged disability onset date. (Administrative Transcript ("Tr.") at 1000.) His highest level of education is a GED. (Tr. at 1000)

The Plaintiff served in the Air Force for approximately nine years, until he was discharged in June 1992. (Tr. at 1001.) He then served as a hospital police officer in Kings County for nine months and as a clerk and a postal police officer with the United States Postal Service from 1994 to 1996. (Tr. at 1001-1002) The Plaintiff's last full-time job was as a New York City policeman from 1996 to 2004. (Tr. at 1002.) When the Plaintiff retired from the police department on July 27, 2004, he was serving as a patrolman. (Tr. at 1002.) At the police department, the Plaintiff also had a desk job, performing clerical duties. (Tr. at 1007.) He retired due to disability because of atrial fibrillation, which developed in 2001 or 2002, and a back injury incurred in a scuffle with a suspect during an arrest. (Tr. at 1003-1004.) He currently receives $3,300 a month from his police disability retirement. (Tr. at 1046.)

In January 2004, the Plaintiff was examined by Dr. Jeff Silber, M.D. During the examination, the Plaintiff complained of a 3-year history of back pain and lower extremity

weakness. Dr. Silber noted a past medical history of diabetes; a cardiac condition; and coronary artery disease. (Tr. at 423.) On examination, the Plaintiff could forward flex to the ground, extend 20 degrees, and rotate 30 degrees bilaterally. (Tr. at 423.)

In March 2004, the Plaintiff was examined by Dr. Eric Jacobson, M.D, who reported that the Plaintiff had full flexion, extension, and lateral bending of the lumbar spine, but all movements caused pain. (Tr. at 410.). Cervical range of motion was full on flexion, extension and rotation on the right side, and restricted on the left side because of tightness. (Tr. at 410.). Bilateral shoulder range of motion was full for flexion and abduction without pain. (Tr. at 410.). Straight leg raising was negative. (Tr. at 410.).

On July 2, 2004, the Medical Board of the City of New York Police Department found the Plaintiff disabled from performing the duties of a police officer. (Tr. at 246-48.) The Plaintiff was noted to have a history of hypertension. However, absent definitive left ventricular hypertrophy on his echocardiograms, the Plaintiff's atrial fibrillation of was of uncertain etiology. (Tr. at 246-48.) The Plaintiff was approved for ordinary disability retirement benefits, but not accidental disability retirement benefits. (Tr. at 246-48.)

### 2. The Plaintiff's Medical Background After the Onset Date of July 27, 2004

In September 2004, clinic notes from the Veterans' Administration Hospital indicate that the Plaintiff did not comply with a diabetic dietary regimen. At that time, the Plaintiff was provided with reminders with respect to the principles of diabetic meal planning.

In November 2004, the Plaintiff was evaluated by Dr. Flex I. Oviasu, a cardiologist. ECG tests conducted at that time were negative for ischemia, arrhythmia, and chest pain. The Plaintiff demonstrated normal blood pressure.

4

In February 2006, a functional capacity questionnaire prepared by a State Agency review consultant noted that the Plaintiff retained residual functional capacity to perform sedentary work and that he possessed some occasional postural limitations. The Plaintiff was advised to avoid concentrated exposure to temperature extremes, wetness, humidity and gases, odors, fumes, and poor ventilation. (Tr. at 940.)

In October 2006, the Plaintiff was treated at the Great Neck Medical Group and complained of chest discomfort and shortness of breath over the prior several months. The Plaintiff presented with accelerated hypertension with high dialostic blood pressure, most likely causing part of the symptoms. At that time, the Plaintiff began Hyzaar medication.

In November 2006, Dr. Steven Kobren, M.D. a cardiologist for the Plaintiff, reported that the Plaintiff had a history of hypertension, hypertensive heart disease associated with atrial fibrillation, diabetes, and coronary artery disease for which he was on multiple medications. (Tr. at 949.) Office notes of Dr. Kobren revealed that the Plaintiff denied ongoing chest pain and shortness of breath. It was also noted that the Plaintiff's atrial fibrillation was stable; that his hypertension was well-controlled; and that the Plaintiff was tolerating his medications and feeling well. On the occasions when the Plaintiff presented complaints of substernal chest discomfort and shortness of breath, it was noted that the Plaintiff had been non-compliant with his medication regimen. Dr. Kobren recommended that the Plaintiff be placed on a disability due to his medical condition and the side effects of his prescribed medications. (Tr. at 949.)

On July 24, 2007, in a physical capacity questionnaire, the Plaintiff's treating physician, Dr. Fitzclaud Grant, M.D. opined that the Plaintiff had the physical capacity to sit and stand/walk less than two hours in an eight-hour workday and could not lift/carry appreciable weight. (Tr. at 971.) Similarly, Dr. Grant reported that the Plaintiff could sit continuously for 30 minutes and

stand continuously for 15 minutes. (Tr. at 970.) However, on that same date, Dr. Grant prepared a cardiac impairment questionnaire and noted that the Plaintiff could only sit for ten to fifteen minutes and stand for five to ten minutes at a time. (Tr. at 977-78.)

Apparently, the physical capacity questionnaire and the cardiac impairment questionnaire had some inconsistencies. For example, in the physical questionnaire, Dr. Grant opined that the Plaintiff could never twist or climb ladders, and could rarely stoop, crouch, or climb stairs. (Tr. at 971.) However, in the cardiac questionnaire, Dr. Grant opined that the Plaintiff could rarely twist, stoop, crouch, and climb ladders, and could occasionally climb stairs. (Tr. at 979.)

### 3. Consultative Examination of the Plaintiff by Dr. Luke Han, M.D.

In October 2005, Dr. Luke Han, M.D. performed a consultative internal examination on behalf of the SSA. During the examination, the Plaintiff reported a number of medical problems, including diabetes, hypertension, asthma, heart disease, and back pain. The Plaintiff stated that he tried to control his diet as a result of his diabetes. He also stated that weather changes or stress triggered his asthmatic symptoms. (Tr. at 915.).

In addition, the Plaintiff alleged that he had problems with anemia, lack of concentration and focus, fatigue, intermittent dizziness, and pain in his neck (Tr. at 916.). The Plaintiff mentioned having a sensory deficit involving his left buttock and entire left leg. The Plaintiff admitted that he consumed liquor, and stated that he could occasionally perform some household chores if he did not have back pain symptoms.

On examination, the Plaintiff appeared to be in no acute distress and his gait was normal (Tr. at 918.) He walked in the examination room several times. He declined to walk on his heels and toes or perform a squat because of pain. His heart rhythm was regular. The cervical spine showed full flexion, extension, lateral flexion, and full rotary movement bilaterally, with the

6

Plaintiff complaining of pain. Forward lumbar flexion was achieved to 20 degrees, extension 10 degrees, lateral flexion 20 degrees and rotary movement 45 degrees bilaterally. (Tr. at 919.) The Plaintiff could also rise from a chair without difficulty. (Tr. at 918.)

The Plaintiff reported back pain on straight leg raising in the seated and standing positions. His strength was normal in the upper and lower extremities. His joints were stable. (Tr. at 919.) No motor deficit was noted. The pulmonary function studies were normal. Dr. Han expressed an opinion that the Plaintiff should avoid exposure to smoke, dust, or known respiratory irritants and that he had a "mild restriction for performing heavy lifting and carrying." (Tr. at 920.).

## C. ALJ Nisnewitz's Findings

In a decision dated January 24, 2008, ALJ Nisnewitz issued his decision. He addressed the issue of whether the Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act (Tr. at 30.) He also noted that the Plaintiff was required under sections 216(i) and 223 of the Social Security Act to establish that he was disabled on or before December 31, 2009, the date he was last insured for disability insurance benefits so as to be entitled to a period of disability and disability insurance benefits. "After careful consideration of all the evidence, [ALJ Nisnewitz] conclude[d] the [Plaintiff] was not under a disability within the meaning of the Social Security Act from July 27, 2004 through the date of [the] decision." (Tr. at 30.).

In particular, ALJ found that:

1. The [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The [Plaintiff] has not engaged in substantial gainful activity since July 27, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1561 et seq.).

3. The [Plaintiff] has the following severe impairments: back problems, a cardiac condition, anemia, asthma, obesity and coronary artery disease (20 CFR 404.1520(c))

These impairments have resulted in more than minimal limitations on the [Plaintiff']s ability to engage in basic work-related activities since his alleged onset date, and so are considered to be "severe" by definition.

4. The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work, limited by some occasional postural limitations and the need to avoid exposure to temperature extremes, wetness, humidity, as well as gases, fumes[,] order[,] and dust.

(Tr. at 32-33.)

ALJ Nisnewitz explained that "[i]n making this finding, . . . [he] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as opinion evidence. (Tr. at 33.) ALJ Nisnewitz deemed the Plaintiff's testimony "not credible." (Tr. at 34.) ALJ Nisnewitz noted that "the [Plaintiff] testified that he was able to work in a capacity that requires him to sit for a period of 8 hours, including his past work as a letter sorter." (Tr. at 34.) The Plaintiff "also admitted that he is able to drive an automobile and does so occasionally and stated that he has not maintained compliance with his cardiac and diabetic medication regiments since the date his application for benefits was filed." (Tr. at 34.)

Further, ALJ Nisnewitz rejected the recommendation of Dr. Kobren that the Plaintiff be placed on disability. ALJ Nisnewitz observed that "Dr. Kobren ha[d] not provided clinic[al] or diagnostic findings to support a conclusion that the claimant is incapable of engaging in sedentary activities." (Tr. at 37.)

ALJ Nisnewitz concluded that the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

8

credible." (Tr. at 37.) ALJ Nisnewitz stated while the Plaintiff had "some problems and some accompanying limitations and exertional restrictions from smoke," "he continues to be active." (Tr. at 37.) Indeed, ALJ Nisnewitz observed that the Plaintiff "continues to drive, maintain daily activities and testified that he could perform a job that would be limited to essentially 8 hours of sitting." (Tr. at 37.). ALJ Nisnewitz concluded that the Plaintiff was "not precluded from all substantial gainful activity." (Tr. at 37.) Accordingly, ALJ Nisnewitz found that "[b]ased on the application for a period of disability and disability insurance benefits filed on September 6, 2005, the [Plaintiff] was not disabled under sections 216(i) and 223(d) of the Social Security Act." (Tr. at 38.) The Plaintiff requested review of the decision of ALJ Nisnewitz.

**D.** **First Appeals Council Decision**

On November 5, 2009, the Appeals Council (1) granted the Plaintiff's request for review; (2) vacated the January 24, 2008 hearing decision; and (3) remanded the case to an ALJ (Tr. at 67.). Specifically, the Appeals Counsel directed further evaluation of (1) whether the Plaintiff's work activity after the alleged onset date was substantial gainful activity; (2) the Plaintiff's past relevant work to determine if it fell within the established residual functional capacity; and (3) the Plaintiff's subjective complaints. Furthermore, the Court directed an ALJ, if necessary, to obtain evidence from a vocational expert to clarify the effect of the assessed limitation on the Plaintiff's occupational base.

In particular, the Appeals Council determined that "there is no comparison of the physical requirements of the letter sorter job with the [Plaintiff]'s residual functional capacity . . . and no information about the job as the [Plaintiff] performed it." (Tr. at 67.) The Appeals Council also noted that although ALJ Nisnewitz found that the Plaintiff had not engaged in substantial gainful

activity after the alleged onset date, the record indicated that the Plaintiff worked as a security guard for the City of New York from January 2005 through June 2005, earning $23,110.11.

**E.  Administrative Record After the First ALJ Decision**

On remand, a hearing was held before ALJ Seymour Rayner.  The Plaintiff testified, as did David Vandergoot, Ph. D., a vocational expert.  The Plaintiff testified that he was able to bathe and dress independently and perform fine motor activities including opening envelopes and using a computer.

The vocational expert was asked whether there were occupations that could be performed by an individual having the same age, education, past relevant work experience, and residual functional capacity as the Plaintiff had through the date last insured. (Tr. at 484-85.)  The vocational expert testified that representative occupations such an individual could have performed included the following unskilled jobs requiring a sedentary exertional capacity: Addressing Clerk with 3,000 positions locally and 23,000 nationally; Clerical Sorter, with 7,000 positions locally and 175,000 nationally; and Telephone Clerk with 2,000 positions locally and 40,000 nationally. (Tr. at 485-86.)

ALJ Rayner considered a finding of Dr. Grant's from June 13, 2010, in which he opined that the Plaintiff could sit two hours and stand/walk up to one hour in an eight-hour workday and lift/carry up to nine pounds.

ALJ Rayner also considered a medical findings summary dated June 21, 2010 prepared by Dr. Paula Schlossberg, M.D., an internal medicine specialist.   Dr. Schlossberg indicated that she first treated the Plaintiff on May 21, 2010. (Tr. at 170.)  She opined that the Plaintiff had the physical capacity to sit two hours and stand/walk up to one hour in an eight-hour workday and lift/carry up to nine pounds. (Tr. at 171.).

In September and October 2010, the Plaintiff sought care at Jacobi Medical Center for complaints of palpitations. During the September treatments, the Plaintiff was found to be in fibrillation and given Cardizem, Lovenox, and then Diltiazem. During the October treatment, the Plaintiff had a normal sinus rhythm for the full course of hospital care. After both the October and September 2010 treatment, the Plaintiff's discharge instructions included no limitation or restrictions for activity. At that time, medication prescribed for the Plaintiff included Diltiazem, Amlodipine, Glipizide, HCTZ, Albuterol, and Coumadin.

ALJ Rayner also considered a cardiac impairment questionnaire dated October 28, 2010 prepared by Dr. Larry Chinitz, M.D, a cardiologist. Dr. Chinitz opined that the Plaintiff had the physical capacity to sit and stand/walk up to one hour each in an eight-hour workday and lift/carry up to nine pounds (Tr. at 179.) Further, Dr. Chinitz reported that the Plaintiff had limitations in climbing, pushing, and pulling. Dr. Chinitz referred to symptoms that included chest pain, shortness of breath, fatigue, weakness, nausea, palpitations, dizziness, and sweatiness.

## F. **ALJ Rayner's Findings**

In a decision dated April 21, 2011, ALJ Rayner issued his decision. He determined that "[a]fter careful consideration of all the evidence, [he] conclude[d] that the [Plaintiff] was not under a disability within the meaning of the Social Security Act from July 27, 2004, through the date last insured." (Tr. at 14.) Specifically, ALJ Rayner found that the Plaintiff had not engaged in a substantial gainful activity from the alleged onset date through his last date insured. As to the Plaintiff's work as a security guard in 2005 for the City of New York, ALJ Rayner found that the Plaintiff "appears to have work[ed] for only a brief period." (Tr. at 16.). Nonetheless, ALJ Rayner gave the Plaintiff "the benefit of the doubt" and found that "the activity [wa]s possibly not substantial gainful activity." (Tr. at 16.)

11

ALJ Rayner also acknowledged that the Plaintiff had "more than minimal limitations" in his ability to perform basic work activities. (Tr. at 17). However, ALJ Rayner found, "the requisite criteria for the relevant listings are absent from the medical records" and "no treating or examining physician [] indicated findings that would satisfy the requirements of any listed impairment." (Tr. at 17.) ALJ Rayner further explained that "[a]fter careful consideration of the entire record, the undersigned finds that, through the date last insured, the [Plaintiff] had the residual functional capacity to sit six hours and to stand/walk two hours in an eight-hour workday and lift/carry ten pounds, which is full range of sedentary work as defined in 20 CFR 404.1567 (a)." (Tr. at 17.)

Moreover, ALJ Rayner considered Dr. Han's opinion "consistent with and supported by the examination and the record as a whole." (Tr. at 19.) Therefore, ALJ Rayner "accord[ed] considerable weight to his opinion." (Tr. at 19.)

On the other hand, ALJ Rayner found that "Dr. Grant d[id] not specify when he began to treat the [Plaintiff], only that office visits [we]re every two to three months for twenty to thirty minutes." (Tr. at 19.) Further, ALJ Rayner noted that "[t]he opinions of Dr. Grant and Dr. Schlossberg we[re] not supported by the clinical signs, diagnostic tests and treatment received." (Tr. at 20.) ALJ Rayner noted that Dr. Grant specialized in internal medicine rather than cardiology. Accordingly, ALJ Rayner accorded limited weight to the opinions of Dr. Grant and Dr. Schlossberg.

Similarly, ALJ Rayner found that Dr. Chinitz failed to document the Plaintiff's clinical signs in the record. For that reason, ALJ Raynor accorded limited weight to his opinion.

Finally, ALJ Rayner concluded that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s

12

statements concerning the intensity, persistence and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above residual functional capacity

assessment." (Tr. at 20.) ALJ Rayner found that "the [Plaintiff]'s allegations [we]re not

supported by the diagnostic tests, which reveal[ed] normal to mild findings and the clinical signs,

which were sporadic in nature." (Tr. at 20.) ALJ Rayner also found that "th[e] Plaintiff was able

to work for a period after the alleged onset date and when compliant with medication, his

conditions were found to be stable." (Tr. at 20.) Moreover, ALJ Rayner found that although the

Plaintiff unable to perform past relevant work, "there were jobs that existed in significant

numbers in the national economy that the [Plaintiff] could have performed." (Tr. at 21.)

The Plaintiff sought review of ALJ Rayner's decision by the Appeals Council. On

December 16, 2011, the Appeals Council denied the Plaintiff's request for review, thereby

making ALJ Rayner's April 21, 2011 decision the final decision of the Commissioner in the

Plaintiff's case. On February 6, 2012, the Plaintiff commenced the present appeal from that

decision.

## II. DISCUSSION

### A. As to Remand under the Act in General

The Commissioner seeks a fourth-sentence remand under Section 205(g) of the Act, 42

U.S.C. § 405(g). That sentence provides that "[t]he court shall have power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

In particular, the Commissioner seeks remand for the ALJ to "obtain[] treatment record's from

plaintiff's treating sources, Dr. Fitzclaud Grant, whose opinion was given little weight, and to

reevaluate the opinion of consultative examiner, Dr. Luke Han, whose opinion was given

considerable weight." (Def's Mem at 2.)  The parties essentially agree that ALJ Rayner

improperly elevated the testimony of Dr. Han, a consulting examiner, over treating sources such

as Dr. Grant, without adequate justification.  For this reason, both parties seek reversal of ALJ

Rayner's decision.  However, the parties differ in their desired next step.  As noted above, the

Commissioner seeks remand for further development of the record, whereas the Plaintiff seeks

an award of benefits and remand for calculation of those benefits.

    As is evident from the fourth sentence of section 205(g) of the Act, the Court must

determine, based on its assessment of the Commissioner's decision, that there is an adequate

reason to justify a remand, and if so, the court will presumably identify in its decision what

issues require remand.  See e.g., Hickman–Smith ex rel. Watkins v. Astrue, 2011 WL 1226361,

at *5, *9 (S.D.N.Y. Mar. 2, 2011) (a fourth-sentence remand is appropriate if the SSA applied

the incorrect legal standard especially if remand is "deemed necessary to allow the ALJ to

develop a full and fair record or to explain his reasoning;" court remanded under sentence four to

have the Commissioner clarify the basis for his credibility analysis and set forth his findings in

accordance with appropriate SSA statutory procedures); Metaxotos v. Barnhart, 2005 WL

2899851, at *5 (S.D.N.Y. Nov. 3, 2005) (remanding in part under sentence four because "the

ALJ did not fully develop the record with respect to treating source medical evidence");

Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) (remanding case where ALJ failed

to *sua sponte* develop the record by contacting a treating physician whose opinion was not

supported by objective clinical findings and instead relied on a consulting physician's assessment

that plaintiff was able to work); Lam v. Apfel, 2000 WL 354393, at *5 (N.D. Tex. Apr. 5, 2000);

see also Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) ("Where there are gaps in the

administrative record or the ALJ has applied an improper legal standard, we have, on numerous

occasions, remanded to the [Commissioner] for further development of the evidence." (alteration in original) (quotation omitted)).

Indeed, the Commissioner often defines the scope of the remand that he is requesting, e.g., Williams v. Astrue, 2012 WL 3096694, at *1 (E.D.N.Y. July 30, 2012) (the Commissioner moved to remand because the ALJ erred in failing to develop the administrative record with respect to evidence of the plaintiff's mental health impairments); Hong Mai v. Astrue, 2011 WL 5429970, at *2–3 (E.D.N.Y. Nov. 7, 2011) (the Commissioner moved to remand because the ALJ erred in failing to develop the administrative record in three specified areas); Agramonte v. Astrue, 2010 WL 3271436, at *1 (E.D.N.Y. Aug. 16, 2010) (the Commissioner moved to remand because "the ALJ did not adequately evaluate" plaintiff's impairments and "did not adequately evaluate opinions provided by medical sources"); Valverde v. Astrue, 2010 WL 1506671, at *3 (S.D.N.Y. Mar. 23, 2010) (the Commissioner moved for remand because part of the ALJ's residual-functional-capacity assessment was not based on substantial evidence, and because subsequent treatment records did not compel a disability finding).

In fact, the Commissioner has done so in this case. Moreover, the Court is free under the fourth sentence to affirm a portion of the Commissioner's decision and reverse another portion as part of its remand order. See e.g., Martinez v. Barnhart, 262 F. Supp. 2d 40, 43–50 (W.D.N.Y. 2003) (affirming ALJ's grant of Social Security Insurance benefits but reversing and remanding denial of SSD benefits); Lam, 2000 WL 354393, at *4–5.

In a SSA proceeding, "the ALJ generally has an affirmative obligation to develop the administrative record," even when a plaintiff is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); Baker v. Bowen, 886 F.2d 289, 292 n. 1 (10th Cir. 1989) ("[T]he ALJ . . . has the affirmative duty to fully and fairly develop the record regardless of whether the applicant

is represented by an attorney or a paralegal."). The regulations governing disability determinations make it the SSA's responsibility to "develop [a claimant's] complete medical history" before finding that a claimant is disabled. 20 CFR § 416.912(d). Specifically, the SSA is bound to "make every reasonable effort to help [a claimant] get medical reports" and to recontact a medical source when the information it supplies "is inadequate . . . to determine whether [a claimant] is not disabled." Id. § 416.912(d)-(e).

**1. As to Whether Remand is Appropriate Here, and if so, for what Purpose**

In this case, the Court finds that remand is appropriate to further develop the record. In this regard, the Court is mindful that the existing record already spans almost one thousand pages and was considered by 2 ALJs. That said, the Court finds that ALJ Rayner failed to adequately justify his departure from the treating physician rule.

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If an ALJ refuses to give controlling weight, he must consider certain factors in deciding how much weight to give, including "(I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA]'s attention that tend to support or contradict the opinion." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also 20 C.F.R. § 404.1527(d)(2). Of importance, "[f]ailure to

provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground

for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Here, the Plaintiff testified that he was treated by Dr. Grant "[s]eventy-five to 100 times"

over a ten-year time period. (Tr. at 1041-1043.)  Dr. Grant opined that the Plaintiff had

significant functional limitations.  Nevertheless, ALJ Rayner afforded little weight to Dr. Grant's

opinion, finding it incomplete and unsupported by clinical signs, diagnostic tests, and treatment

records.

Under these circumstances, in the Court's view, ALJ Rayner erred by rejecting Dr.

Grant's opinion "without first attempting to fill any clear gaps in the administrative record," Rosa

v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999), and by "substitut [ing] his own expertise or view of

the medical proof for the treating physician's opinion," Shaw v. Chater, 221 F.3d 126, 134–35

(2d Cir. 2000).  The ALJ has "an affirmative obligation to develop the administrative record,"

Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999), including the duty to "seek additional evidence

or clarification from your medical source when the report from your medical source contains a

conflict or ambiguity that must be resolved, the report does not contain all the necessary

information, or does not appear to be based on medically acceptable clinical and laboratory

diagnostic techniques," 20 C.F.R. § 404.1512(e)(1).  Moreover, "lack of clinical findings" does

not constitute a "good reason" for discrediting an opinion because "even if the clinical findings

were inadequate, it was the ALJ's duty to seek additional information from [the medical source]

*sua sponte*." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).  "Instead of rejecting the

opinion of a specialist who treated [the Plaintiff] more than ["[s]eventy-five to 100 times"] times,

the ALJ should have sought clarification." Nuzzo v. Colvin, 12-CV-2373 FB, 2013 WL

2626873, at *2 (E.D.N.Y. June 11, 2013).  "Because [Dr. Grant's] records may contain medical

evidence directly relevant to plaintiff's allegations of disability, [ALJ Rayner] should be given an opportunity to obtain them in order to fairly adjudicate plaintiff's claim." Nicholson v. Apfel, 97 CIV. 9103 (SAS), 1998 WL 474203, at *1 (S.D.N.Y. Aug. 12, 1998).

Similarly, remand is appropriate for ALJ Rayner to reevaluate the opinion of Dr. Han, the consultive examiner, which was given considerable weight. Dr. Han concluded that the Plaintiff had a "mild" restriction for heavy lifting and carrying. (Tr. at 920.) However, the Second Circuit has held that an expert opinion does not rise to the level of substantial evidence where the expert described the claimant's impairments only as "[l]ifting and carrying moderate[,] standing and walking, pushing and pulling and sitting mild." In this respect, ALJ Rayner considered an opinion couched in terms "so vague as to render it useless in evaluating" the claimant's residual functional capacity, Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000), superseded by statute on other grounds, 20 C.F.R. § 404.1560(c)(2). In addition, Dr. Han offered no assessment of the Plaintiff's ability to stand, sit, or walk. (Tr. at 979.) Finally, Dr. Han stated the Plaintiff should avoid certain pulmonary irritants; however, ALJ Rayner failed to discuss or explain his rejection of this portion of Dr. Han's opinion.

By the same token, the Plaintiff's motion for reversal and a remand solely for the purpose of a calculation of benefits must be denied. "Because the Court finds that [ALJ Rayner] did not fully discharge his duty to develop properly the administrative record, it cannot simultaneously conclude that the record conclusively shows that the Plaintiff was disabled before [the date last insured]." Judge v. Astrue, 09-CV-4058 JS, 2011 WL 1810468, at *4 (E.D.N.Y. May 10, 2011); Bush v. Shalala, 94 F.3d 40, 46 (2d Cir. 1996) ("[A] decision to reverse and direct an award for benefits 'should be made only when. . . substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits'"") (quoting Gilliland v. Heckler, 786 F.2d

178, 184 (3d Cir. 1986); <u>Batista v. Barnhart</u>, 326 F. Supp. 2d 345, 354 (E.D.N.Y. 2004) ("[B]ecause the ALJ failed to adequately develop the record in reaching his determination of the plaintiff's residual functional capacity, the Court need not decide whether the ALJ's opinion was supported by substantial evidence").

## 2. <u>As to a Time Limit</u>

District courts in this circuit have been instructed to consider imposing a time limit on subsequent proceedings when ordering a remand for further development of the record. <u>See</u> <u>Butts v. Barnhard</u>, 388 F.3d 377, 387 (2d Cir. 2004) (imposing a time-limit of 60 days on subsequent proceedings and ordering calculation of benefits if the deadline is not met), <u>modified</u> 416 F.3d 101, 106 (2d Cir. 2005) (modifying the deadline from 60 days to 120 days, or 90 days after plaintiff is prepared to go forward if plaintiff is not prepared after 30 days). As it has been more than seven years since the Plaintiff filed his initial application for benefits, a time limit is appropriate in this case to prevent undue delay. "If [the P]laintiff is able to go forward within 30 days, the proceedings before the ALJ must be completed within 120 days; if [the Plaintiff is not prepared to go forward within 30 days, the proceedings before the ALJ must be completed within 90 days of the date when plaintiff is prepared to proceed. If these deadlines are not observed, a calculation of benefits must be made." <u>Dambrowski v. Astrue</u>, 590 F. Supp. 2d 579, 588 (S.D.N.Y. 2008).

### III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings is denied and the Defendant's motion to remand to ALJ Rayner for further proceedings in accordance with the terms of this Decision and Order is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
June 21, 2013

_ *Arthur D. Spatt*                          _
ARTHUR D. SPATT
United States District Judge